## Gibbons, Appellant, *v.* Gaffney.

[Marked to be reported.]

*Equity—Deed—Principal and surety—Equitable estate—Costs.*

Gaffney purchased from Throop and others a lot of land for $300, and secured the vendors by a confession of judgment contained in the written agreement of sale. Gaffney erected a building upon the land, and a mechanic's lien was entered therefor, upon which judgment was obtained. Execution was issued, and Gibbons, the owner of the mechanic's lien, bid in the property for one thousand dollars. Out of the proceeds Gibbons was paid the amount of his lien, and a balance of $326 was left in the hands of the sheriff. Subsequently the vendors of the land assigned to Hulslander et al. the balance of purchase money due, $298, and judgment was entered in their favor on the warrant of attorney contained in the agreement, and the fund in the hands of the sheriff was levied upon. The vendors did not deliver or tender a deed for the land. *Held:*

1. That the land in the hands of Gibbons was responsible for the balance of the purchase money, and that Gaffney stood merely in the relation of a surety towards it.

2. That Hulslander et al. were not entitled to the fund in court until a deed was made by the vendors to Gaffney subject to the equitable estate in Gibbons, and an assignment was made by Hulslander et al. of the purchase money judgment to enable Gaffney to enforce it against the lands in the hands of Gibbons.

3. That as Hulslander et al. had no right to enter up judgment and issue execution until they had brought into court a proper deed, two thirds of the costs of the audit should be imposed upon them, payable out of the fund which should be awarded to them.

4. That the decree of the lower court ordering a tender of a sufficient deed within thirty days as a condition of the award of the fund to Hulslander et al. should be modified when affirmed in the Supreme Court so

that the thirty days should be computed from the date of the affirmation of the decree.

*Debtor's exemption—Purchase money obligation.*

It seems that, although a debtor cannot claim the benefit of the exemption laws against a purchase money obligation which is being enforced against the land for which it was given, he can do so where the obligation is being enforced against other lands belonging to him, or against his personalty.

*Claim for exemption—Laches.*

It seems that a claim for the benefit of the exemption laws is too late where the fund has been paid into court by the sheriff, and an auditor appointed, and the audit nearly concluded before the claim is made.

Argued Feb. 21, 1893. Appeal, No. 34, Jan. T., 1893, by plaintiff, P. F. Gibbons, from order of C. P. Lackawanna Co., June T., 1891, No. 124, distributing the proceeds of the sheriff's sale of the real estate of defendant, John Gaffney. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Distribution of proceeds of sheriff's sale.

The facts appear by the following opinion of the court below, by ARCHBALD, P. J.:

" This case comes before us upon exceptions to the report of the auditor appointed to distribute a certain fund originally realized by a sheriff's sale of the defendant's real estate. A brief statement of the facts will be necessary to understand the questions which arise upon the record.

" The defendant, John Gaffney, purchased a lot of land in the village of Throop, in this county, in June, 1888, by contract with B. H. Throop and others, the holders of the legal title. The purchase money was $300, and was secured to the vendors by a confession of judgment contained in the written agreement.

" Gaffney subsequently became indebted to P. F. Gibbons for a balance due for the building of a house upon the land, and a mechanic's lien having been entered therefor and prosecuted to judgment, the land was sold by the sheriff on a lev. fa. Sept. 26, 1891, and Gibbons became the purchaser at a bid of $1,000. Out of the money so realized Gibbons was paid the amount of his mechanic's lien in full, $623.27, and $50.46

more went to meet the costs ; but this still left $326.27 in the hands of the sheriff undisposed of.

" In the natural order of things—there being then no other lien of record—the defendant Gaffney would have been entitled to claim these overplus moneys as his own. But on Oct. 7, 1891, the vendors of the land assigned to Hulslander & Vosburg, trustees, the balance of purchase money due, $298.86, and the same day judgment was entered in their favor for that sum on the contract by virtue of the confession contained in it. Upon this judgment a fi. fa. forthwith issued, and the sheriff on it levied upon the moneys remaining in the sheriff's hands from the other sale. The fund coming into court in this shape is now before us for distribution.

" The auditor has awarded it to the purchase money judgment held by Hulslander & Vosburg, trustees. The defendant contests their right to it on two grounds : 1. Because the vendors, in whose shoes these parties stand, had no right to enforce their demand for the purchase money and still retain the legal title to the land ; and, 2. Because the money has been claimed by the defendant by virtue of his $300 exemption. I will consider these points in their inverse order.

" The auditor has rejected the defendant's exemption claim, because it is made against a purchase money judgment. I do not understand the force of this objection in the present case. It is indeed provided in the act of 1849 that the right of exemption there 'shall not be construed to affect or impair the liens of bonds, mortgages, or other contracts for the purchase money of the real estate of insolvent debtors,' but it is evident that this only applies where the purchase money obligation is being enforced against the land for which it was given. Where it is enforced against other lands of the defendant or against his personalty there is nothing in the letter or spirit of the law to prevent him from setting up his claim. It cannot in such a case be said in any sense to impair the purchase money lien to allow to the defendant his exemption right. But it may be in the minds of some to say that in the present case the moneys levied upon actually came from the land sold by the vendors, and therefore the case is brought within the statutory proviso. To this there is the ready answer, that the overplus in the sheriff's hands was not derived from a sale of the lands con-

tracted to be sold to Gaffney, but only of his equitable interest therein; and more than this the overplus in the sheriff's hands in no sense bore the character of land, but was personalty, pure and simple. It was only because it was moneys of the defendant in his hands that it was liable to be seized in execution by the sheriff on the fi. fa. in question.

"But while the auditor erred in the reason which he gave for refusing to allow the defendant his exemption, the refusal was right upon another ground. The defendant's application was not made in sufficient season. The law contemplates that it will be made to the sheriff or other officer who holds the execution, and all its provisions are framed accordingly. It would seem, therefore, to be too late to make the claim after the claim has passed from the officer's hands. But however that may be, in any event, unless it be promptly made, the right to it is to be regarded as waived.

"In the present instance not only was the money paid into court by the sheriff and an auditor appointed, but the audit was allowed to go on to its very close before the defendant moved a step to make the claim. Clearly it was then too late. The contest before the auditor had been made upon other grounds without a whisper of any such purpose, and the execution creditors were there put to trouble and expense which they might otherwise have been unwilling to undertake. Had the claim been made in season there is no knowing but the right to it would have been conceded, and a contest spared. Under such circumstances I feel bound to hold that the exemption was lost by the delay of the defendant in claiming it.

"The other branch of the case presents some difficulties, not indeed so far as the principal rights of the parties are concerned, but with regard to their dependent equities. The right of the holders of the purchase money judgment to enforce it personally against the defendant, Gaffney, cannot be successfully gainsaid.

"By his agreement with the vendors he covenanted to pay them for the land the sum of $300, and he thus became personally obligated to them in that amount. In the collection of this debt the vendors were not compelled to follow the land, but could pursue, if they chose, their original debtor. It does not matter to them that he has lost his title to the land by a

sheriff's sale, any more than if he had parted with it voluntarily. They had a perfect right, therefore, to enter up judgment on the contract, and levy upon the moneys of the defendant remaining in the hands of the sheriff upon the other execution. This right also they could convey to Hulslander & Vosburg to whose use the judgment was transferred.

" So far the way is clear ; the difficulty lies in adjusting the reciprocal rights of the defendant.

" In holding the vendee personally to his part of the contract, the vendors, or the parties who represent them here, must be prepared to perform theirs. By the same writing by which Gaffney agreed to pay the purchase money, Throop and the others undertook to convey to him the land there mentioned. There are mutually dependent covenants, and in a proceeding by either party to enforce the one which makes in his favor, he must be prepared to show either that he has performed his part of the contract, or that he is ready to do so. An action, therefore, by the vendors for the purchase money, involves the giving of a deed for the property which they have promised to convey. If this be not tendered before suit brought, it must at least be brought into court before judgment is rendered or execution allowed to issue. At the same time that the vendors are enforcing their rights, the court will see to it that the vendee secures his, and will not remit him to another and separate proceeding.

" In the present instance, as there was a confession contained in the contract for the amount of the purchase money, the vendors had a short cut to judgment, and were relieved from the necessity of first bringing in a deed. But that did not by any means dispose of the right of the vendee to have one before or upon payment of the purchase money due. That right was as perfect as the other that the vendors should be paid. Before, therefore, the holders of the purchase money judgment issued execution, they should in strict justice have brought into court such a deed as the defendant was entitled to receive. To issue execution without doing so, was to disregard his rights, and upon a proper application the writ would undoubtedly have been stayed if not set aside. But he did not thereby lose his rights ; as the judgment is being enforced against him specifically, he is entitled to insist, if no other considerations inter-

vene, that the vendors perform their reciprocal covenant and convey to him the land for which he is thus compelled to pay. They cannot against his protest collect their judgment of him, and at the same time deny him a conveyance.

. " If this were all there was in the case, the disposition of it would not be difficult. But it is not; there are other things which have to be considered, and which affect somewhat the equities of the defendant. His interest in the land has been sold at sheriff's sale, and the equitable estate which he had therein has passed to Gibbons, the purchaser. Gibbons has thereby stepped into the place of Gaffney, the same as though the latter had assigned the contract to him, and is entitled upon payment of the balance of the purchase money due on the contract to compel a conveyance of the legal title. The problem is to reconcile this with the recognized rights of Gaffney, so as not to subject the vendors to double and conflicting demands of the parties to one another, as well as to the land, which is the subject of the contract, and to the purchase money due thereon ; it will be found upon careful consideration to be as follows : The land in the hands of Gibbons must be regarded as ultimately responsible for the balance of the purchase money. Gaffney, having lost his interest therein, stands merely in the relation of a surety towards it. He cannot be called upon to pay up the purchase money for the benefit of Gibbons, because there is no obligation of that kind resting upon him. Gibbons got the benefit of what had been paid upon the land at the time of the sheriff's sale, but that was all. He took it with all its burdens, and among these was that of meeting the purchase money which was still due.

" So far as these two parties are concerned if Gaffney is now compelled to pay anything on the land for Gibbons, he is entitled to be reimbursed out of the land ; while all that Gibbons can ask is that he obtain a conveyance of the legal title on payment of that for which the land is still the debtor.

" This condition of things was well known to the vendors through the parties whom they have permitted to represent them here. When therefore they undertook to collect their purchase money judgment out of Gaffney, personally, they assumed responsibility for the consequent result. It is true the right to so enforce their judgment could not be interfered with

or impaired by any transfer of the equitable title. But, on the other hand, neither could they, in so holding Gaffney to the letter of the contract, deny to him the rights which he had by virtue of that relation, so far as their own rights were not disturbed thereby.

' " Now, we have seen that as between themselves and Gaffney they could not demand the purchase money without at the same time tendering a deed. This is still his right. The only modification which the vendors are entitled to claim for their own protection is that the deed shall be made subject to the outstanding equitable estate now held by Gibbons. A conveyance in this form sufficiently preserves the rights of the latter as assignee of the vendee, and would be a complete answer to a demand by him upon the vendors for specific performance. It affords, therefore, all the protection which the vendors can ask. This completely solves the problem and adjusts the equities of all the parties, so that none of them can complain.

" One other thing is to be observed in this connection; not only is Gaffney entitled to the deed just spoken of, he has also a right upon payment of the purchase money judgment to such an assignment of it as will enable him to enforce it against the lands in the hands of Gibbons. There, as we have seen, is the primary liability; that of Gaffney, so far as regards the land, being merely secondary. Under these conditions he is entitled, upon payment of the principal debt to the vendors, to a transfer of all the securities which they hold. This is the familiar rule in equity in the case of a surety and it is applicable here.

" The only remaining question is whether the moneys collected of the defendant will in fact pay the vendors' purchase money judgment. It is assumed in the preceding discussion that they will; but as the distribution made by the auditor only satisfies a part of the judgment, we shall have to see if that is correct.

" The fund levied upon by the sheriff and paid into court was as we have seen $326.27, the purchase money judgment amounting, however, to but $298.86, and the costs thereon and upon the execution were but $6.30 more. Here, then, was enough and more to pay the judgment debt and costs. The auditor, however, has charged up against the fund the costs of the audit, $68.27, and thereby reduced it to less than enough to do so. Is this under the circumstances a just disposition of the

costs? We think not. If the conclusions which we have so far reached are correct, at the time the vendors entered up their judgment they were not entitled to issue execution, and are not entitled to maintain it now, until they have brought into court for the benefit of the defendant such a deed as has been above described. The defendant has therefore been forced to make this contest in order to secure from them his rights, and he should not be compelled to bear the whole expense of it. The costs are not properly chargeable against the fund which virtually puts them upon the defendant, but must be principally borne by the vendors, or those who represent them here.

" Upon the conclusions which we have thus reached, we make the following disposition of the case : All the exceptions are dismissed, except the fourth and the last, which are in part sustained, and thereupon the distribution reported by the auditor is modified as follows: If [the use plaintiffs in the purchase money judgment entered to No. 103, November term, 1891, shall file in court within thirty days from this date a good and sufficient warranty deed in fee simple from Benjamin H. Throop and others, the vendors named in the contract upon which said judgment was entered, to John Gaffney, his heirs and assigns, for the land in said contract described, subject nevertheless to the rights of Patrick F. Gibbons as ·purchaser at sheriff's sale] [1, 2] on Sept. 26, 1891, of the equitable estate and interest of the said John Gaffney of the date therein, [and shall further file within the same period a due assignment in writing of the said contract and the judgment entered thereon to the said John Gaffney, his executors, administrators and assigns, or to such party as he, or they may direct,] [3, 4] then and thereupon the fund in court shall be paid out and distributed as follows :

| | |
|---|---|
| Amount of fund . . . . . . . | $326.27 |
| To B. H. Throop and others for the use of Hulslander & Vosburg, trustees, on judgment, No. 103, Nov. term, 1891, against John Gaffney, the amount due thereon, Oct. 7, 1891, being the sum of . . . . . . | $298.86 |
| To the same parties as costs thereon . . . | 5.05 |
| Amount carried forward . . . . . | $303.91 |

| | |
|---|---:|
| Amount brought forward . . . . | $303.91 |
| To John J. Fahey, Esq., sheriff, costs of execution on said judgment . . . . . | 1.25 |
| Total debt and costs . . . | $306.16 |
| The balance is awarded to John Gaffney, the defendant . . . . . . . | 20.11 |
| Total fund distributed . . . | $326.27 |

["But in case of the failure of the said use plaintiffs to file within the said thirty days the deed and assignment aforesaid, then and thereupon so much of the said fund as is awarded to them shall be paid to the said John Gaffney.] [6]

["The costs of the audit, as specified by the auditor, amounting to $68.27, shall be paid and borne as follows: Two thirds thereof, say $48.16, shall be paid by the said Hulslander & Vosburg,] [7] and one third, say $20.11, shall be paid by the said John Gaffney, to be deducted in each case from the amounts coming to the said parties respectively from said fund. And if the said Hulslander & Vosburg fail to entitle themselves, as aforesaid, to a share therein, then their share of the costs of the audit shall in the first instance be paid and deducted from the share of the said John Gaffney to be by him recovered·from the said Hulslander and Vosburg, personally, who are hereby required to pay and satisfy the same.

"As thus modified the report of the auditor is confirmed."

*Errors assigned* were (1–4, 6, 7) decree of court, quoting paragraphs in brackets; and (5) in refusing to modify said order so that the deed be given to P. F. Gibbons, and that the said judgment be satisfied.

*A. A. Vosburg, W. S. Hulslander* with him, for appellant.—The purchaser at the sheriff's sale of the vendee's interest in the property stands in exactly the same position as if he purchased of the vendee at private sale: Bradley v. O'Donnell, 32 Pa. 279; Stansell v. Roberts, 13 Ohio, 148; Nottes's Ap., 45 Pa. 361; Crane v. Caldwell, 14 Ill. 468.

Defendant not only has no interest or estate in the land which would entitle him to receive a deed, but, further, he has no right to be subrogated as plaintiff in the judgment which

had been entered against himself, by virtue of his own confession of judgment in the contract on which judgment was entered: Irwin v. Shoemaker, 8 W. & S. 75; Sprowls v. McCloud, 5 Cent. R. 453; Lewis v. Hanchman, 2 Pa. 416.

The court had no power to restrain and restrict the collection of this judgment because a judgment of record cannot be assailed, and the collection thereof restrained and restricted in a collateral proceeding, except for fraud, and none is alleged in this case: Postens v. Postens, 3 W. & S. 127; Bennett v. Cadwell, 70 Pa. 253; Sheetz v. Hanbest, 81 Pa. 100; Vierheller's Ap., 24 Pa. 108.

A principal who pays his own debt is not entitled to be substituted to obtain contribution even though there are other principals: Mehaffy v. Share, 2 P & W. 361; Croft v. Moore, 9 Watts, 451.

A judgment entered on a warrant of attorney is as impervious to collateral assault as a judgment obtained in open court: Ogle v. Baker, 38 Pitts. L. J. 302.

*M. E. McDonald, John F. Murphy* with him, for appellee.—The judgment creditors of a vendee, under articles of agreement, who have a lien against him, have a lien, such as it is, and when the sheriff sells the estate of the vendee, he sells it such as it is; that is to say, a right to demand a conveyance of the legal estate from the vendor, upon payment of the balance of the purchase money due from the vendee. The purchaser from the sheriff was bound to take notice of the right of the vendor at his peril: Auwerter v. Mathiot, 9 S. & R. 402; Vierheller's Ap., 24 Pa. 105; Canon v. Campbell, 34 Pa. 309; Purviance v. Lemmon, 16 S. & R. 294.

Judgments against vendors and vendees under articles of agreement bind the interests of each judgment debtor and nothing beyond: McMullen v. Wenner, 16 S. & R. 18.

The title of the purchaser is fixed at the moment of sale. It cannot be enlarged by the vendor appearing before the auditor, and claiming to take the money on his judgment, even though the vendor has a lien for the unpaid purchase money on the record, before the sheriff's sale of the vendee's interest: Canon v. Campbell, 34 Pa. 309; Wolfe's Ap., 110 Pa. 126.

PER CURIAM, March 6, 1893 :

The questions involved in this case have been so fully con-sidered and satisfactorily disposed of by the learned president of the common pleas that we deem it unnecessary to add any-thing to what is so well said in his opinion, sent up with the record. For reasons therein given at length the decree should be affirmed ; but, if the use plaintiffs in the purchase money judgment, No. 103, November term 1891, have not yet filed in court the deed mentioned in said opinion, the thirty days with-in which they were authorized to do so should be computed from this date. With that modification, the decree is affirmed, and the appeal dismissed, with costs to be paid by appellant.